MEDICAL CENTER CLINICAL LABORATORY *et al.*, Plaintiffs-Appellees, v. THE DEPARTMENT OF PUBLIC AID *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 1—87—1692

Opinion filed June 14, 1989.

Neil F. Hartigan, Attorney General, of Springfield (David Adler and James C. O'Connell, Special Assistant Attorneys General, of Chicago, of counsel), for appellants.

Gerald G. Goldberg and Donald A. Smith, both of Chicago, for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Defendants, Illinois Department of Public Aid (IDPA) and Gregory L. Coler, Director, IDPA, appeal from an order of the circuit court of Cook County reversing the administrative decision of IDPA which found plaintiff, Medical Center Clinical Laboratory (Medical Center), liable for repayment of $23,889.50 in fees to IDPA because of certain record-keeping discrepancies. The circuit court found that recoupment for $7,856.30 in payments made by IDPA to Medical Center was war-

ranted, but that recoupment for the balance of payments was against the manifest weight of the evidence. We affirm.

Medical Center is a licensed Illinois clinical laboratory and Illinois Medical Assistance Program provider that performs laboratory tests for public aid recipients and bills IDPA for its services. IDPA conducts periodic audits of provider records to verify that the lab has performed the services for which payment has been made or requested. When discrepancies are discovered, IDPA seeks recoupment for payments made to providers for unauthorized or undocumented services. An audit of Medical Center records covering the period of August 1982 through January 1984 revealed numerous record-keeping discrepancies. At issue in the present case are Type 1 and Type 10 discrepancies. Type 1 discrepancies occur when the auditors do not find documentation to support the provider's request of payment for services. Type 10 discrepancies involve requests of payment for services that the provider is not certified to perform.

The recoupment disallowed by the trial court involved 704 Type 1 and 252 Type 10 discrepancies in the documentation for tests performed at Augustana Nursing Home (Augustana). IDPA sought recoupment for the Type 1 discrepancies because it alleged that the lab requests submitted by Medical Center did not satisfy IDPA requirements. IDPA requires that providers produce lab requests for each test performed. The lab request must include the following: (1) name of patient; (2) date of test; (3) patient diagnosis; (4) type of test; and (5) name or signature of the requesting physician. Medical Center presented evidence which demonstrated that the information required by IDPA was provided via Augustana's "monthly standing order stat sheet" and patient census sheets. The order sheet contains the lab tests to be performed on each patient and the census sheets contain the name of each patient's physician.

IDPA also sought reimbursement for Type 10 discrepancies for the billing of ova and parasite tests allegedly performed without authorization. IDPA does not authorize payment for services that a provider is not certified to perform. It is undisputed that Medical Center is not certified to perform parasitology tests. Medical Center asserts that it was advised by IDPA to use an alternative test code because there was no pin worm test code at that time.

Following an administrative hearing, the hearing officer found Medical Center liable for repayment of $23,889.50 in fees to IDPA. IDPA, through Director Coler, issued an administrative decision which affirmed the hearing officer's findings. Thereafter, Medical Center filed a complaint for administrative review in the trial court. The trial

court reversed a portion of IDPA's decision. The court found that (1) IDPA's lab request requirements were fulfilled by Medical Center and Augustana's documentation and (2) IDPA was estopped from asserting that Medical Center improperly used the parasitology test code where no pin worm test code was available and Medical Center provided documentation which demonstrated that the pin worm tests were performed. This appeal followed.

Initially, we note that this is not a case in which Medical Center did not produce any documentation at all. IDPA has simply interpreted its policy to find that request lists were not satisfactory because the name of the physician was not actually on the lab request itself. Also, there has been no evidence that Medical Center did not perform the Augustana tests for which IDPA is seeking recoupment. In fact, the parties entered into a stipulation that there is no evidence to indicate that the tests were not performed.

IDPA's contention is that the trial court erred in reversing its decision because the monthly test lists submitted by Medical Center did not comply with IDPA regulations governing lab requests. We disagree. The pertinent regulations which govern Medical Assistance Program providers are set out as follows in the Illinois Administrative Code:

> "Payment shall be made for only those laboratory services that have been ordered in writing by the referring practitioner as being essential to diagnosis and treatment. The practitioner must include the diagnosis or condition on the written request." (89 Ill. Adm. Code §140.430(c) (1985).)

Other pertinent provisions of the Code provide:

> "b) The basic records which must be retained include:
>
> 1) All original orders from practitioners for laboratory services ***.
>
> * * *
>
> c) In the absence of proper and complete records no payment will be made and/or payments previously made for which services are not documented will be recouped." 89 Ill. Adm. Code §140.434 (1985).

The lab request sheets provided by Medical Center contained a list of each patient, the test to be performed and the month that the test was requested. Marilyn Manual, a supervising nurse at Augustana, testified that she prepared the sheets to replace individual lab requests because the patients, who had behavioral problems, would grab and tear the individual sheets during testing. Manual explained that the original lab requests were kept in the patient's medical rec-

ords. In addition, the IDPA auditor was provided with a patient census sheet which identified each patient's physician. The two lists when viewed together provided the information required by IDPA. Based on this evidence, the court found that since the requested information was provided, the lab request requirements were fulfilled and recoupment of payments for those documented services was against the manifest weight of the evidence. Since an opposite conclusion from the IDPA decision granting recoupment was clearly apparent, we find no error in the trial court's ruling.

IDPA next argues that it was not estopped from recouping payments for parasitology tests where Medical Center was not authorized to perform the test. We disagree.

■ The Illinois Administrative Code provides that "[p]ayment shall not be made for any service a laboratory is not Medicare certified to provide." (89 Ill. Adm. Code §140.431(a) (1985).) It is undisputed that Medical Center is not certified to perform the parasitology tests which were the subject of the Type 10 discrepancies. However, the evidence revealed that Medical Center performed pin worm, not parasitology, tests and merely used the parasitology code because no pin worm test code was available. The court found that under these circumstances, IDPA was estopped from recouping payments made for pin worm tests which Medical Center was authorized to perform. In light of the facts of this case, we find no error in the trial court's ruling.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

McNAMARA* and WHITE, JJ., concur.

---

*Justice McNamara participated in this opinion prior to his assignment to the sixth division.